## M. A. CLARK, Appellant, v. O. McCLEERY et al.

**Rescission of Land Contract:** EVIDENCE: *Tender of conveyance.*
Plaintiff, by written contract, agreed to convey land in another
state in exchange for intervener's farm. Intervener conveyed
her farm, and thereafter plaintiff sold it, taking a mortgage for
the purchase price. Plaintiff failed to deposit a deed to his
land, as required by his contract, though no time was, fixed
therein, until more than 18 months after the date thereof, and
not until he had begun an action to foreclose such mortgage.
In such action intervener prayed that her contract with plain-
tiff be rescinded, and that she be subrogated to his rights un-
der the mortgage. The evidence showed that at the date of
the contract with intervener plaintiff had agreed with a third
person to convey the same land proposed to be conveyed to her
and that such agreement was subsequently fulfilled. Plaintiff
testified that he foreclosed his trust deed for the purchase price
under the later transaction within less than a year from the
date of the present action to foreclose. The laws of the state
in question were not proven, so as to show that they did not
allow one year for redemption. *Held*, that since plaintiff was
not shown to have title or to have tendered a conveyance within
a reasonable time a decree for intervener was proper.

*Appeal from Monona District Court.*—HON. WILLIAM
HUTCHINSON, Judge.

SATURDAY, OCTOBER 19, 1901.

THE plaintiff, by writen contract, entered into De-
cember 31, 1896, agreed to convey to intervener a farm of
153 acres in Prentiss county, Miss., in exchange for 65 acres
in Monona county, Iowa, subject to incumbrances amounting
to $1,024. On the same day intervener conveyed the 65
acres to him, and in February, 1897, executed notes amount-
ing to $750 in settlement of the difference to be paid, and
also a trust deed to the Mississippi land securing their pay-
ment. These were deposited in a bank at Smithland, to be
delivered to plaintiff upon the receipt of the deed to inter-
vener. The incumbrances on the Monona county land were
reduced to an $800 mortgage, and it traded to McCleery,
who executed a note and mortgage thereon to plaintiff cover-

ing a difference of $225. This action was begun March 30, 1898, to foreclose this McCleery mortgage, and on August 23, 1898, Jamima Holbrook filed her petition of intervention, setting up the foregoing facts, and averring that plaintiff had failed and refused to execute the deed to the Mississippi land as agreed, and she prayed that she have judgment for the 65 acres, less incumbrances, that conveyance thereof be adjudged void, that she be subrogated to the rights claimed by plaintiff in the McCleery mortgage, and that the notes and mortgage executed by her be canceled. McCleery pleaded want of consideration, and joined in intervener's prayer for relief. Issues being joined, a hearing was had, which resulted in judgment for intervener against plaintiff for $592, with interest from the date of the contract, a decree of foreclosure against McCleery, and an order that the proceeds thereof be applied on said judgment. The plaintiff appeals. —*Affirmed.*

*Brown & Anderson* and *Wright, Call & Hubbard* for appellant.

*C. E. Cooper* for appellee.

LADD. J.—In the trade the Mississippi land was estimated to be worth $1,550, on which the intervener was allowed $800 for her interest in the 65 acres in Monona county, and in setttlement of the difference she signed notes amounting to $750, secured by a trust deed of the Mississippi land, and left these with a bank, to be turned over to plaintiff upon receipt of the deed conveying said land to her. On the same day—December 31, 1896—she conveyed to him the 65 acres, and he exchanged it to McCleery February 5th following. The deed of the Mississippi land to intervener was not to be delivered then. According to plaintiff, no time was fixed, though she was informed of the circumstances preventing its execution at that time. We are inclined to think she knew nothing of these, and no more than that something was in the way of the immediate execution of the deed. Certainly she supposed it would

be ready for her before departing from the county, as she contends, he promised, but it was not. She wrote after leaving, and was again put off. Again, after returning from Kentucky, she advised him twice by letter that she was ready for the deed he had promised her while there, and no response came. In March, 1898, after the beginning of this action, he told her he would send the deed to her, but she then refused to have it. Not until August 25, 1898, did he deposit the deed in the bank in pursuance of their agreement. True, the intervener appears to have reposed unbounded confidence in plaintiff, had arranged with him to collect rent on this land that yielded none, and apply it on interest, and even supposed herself the owner of the property. But all this did not relieve plaintiff of his obligation to make the conveyance within a reasonable time. He disposed of her land within two months after the trade, and exacted the execution of interest-bearing notes for the difference. In view of these facts it is apparent that intervener did not, and plaintiff should not have, anticipated any considerable delay in the delivery of the deed of the Mississippi land. But he had no title to convey. Shortly before the contract with intervener—November 20, 1896—he had entered into a written agreement to convey it, with other land, to Anna Lammerding, in exchange for a contract of purchase of a quarter of a section of land in Woodbury county. This agreement was carried out by causing the conveyance to Lammerding, January 9, 1897, and taking from her a trust deed thereof to secure the payment of a difference of $1,125. He now insists that Lammerding had no interest in the Woodbury county land, and that he discovered this before contracting with the intervenor. The record, however, satisfies us that Lammerding's contract of purchase had not been forfeited prior to the assignment to plaintiff, but, even if this were not so, the owner was ready to carry out the contract with plaintiff; and his letters show that he was fully advised of the amount necessary to be paid in order to acquire title from the owner. Even though deceived by Lammerding,

with full information he ratified the transaction,—First, by exacting the rent of the Woodbury county land as the price of a quitclaim deed to the owner of the fee; second, by offering for sale or trade the mortgage received from Lammerding on the Mississippi land; and, third, by foreclosing the trust deed. He knew then, when agreeing to convey to intervener, that he had contracted the land to another, and, after obtaining that belonging to her, deliberately deprived himself of the power to carry out his part of the agreement. That this alone would have justified a rescission is well settled. *Bartle v. Curtis,* 68 Iowa, 202. See *McWhirter v. Crawford,* 104 Iowa, 550. We should be inclined to think he contracted with intervener in reliance on being able to wrest the land by foreclosure had he not undertaken a sale of the mortgage. But had he title when the deed to intervener was left at the bank? The first of the notes secured by the trust deed from Lammerding to fall due matured November 20, 1897, and, though the trust deed provided for foreclosure out of court, as the law in Mississippi, in the absence of a showing to the contrary, is presumed to be like that of this state, the owner of the land had one year after foreclosure for redemption. The law peculiar to Mississippi is neither pleaded nor proven, and no record of the foreclosure proceedings was offered. The only evidence introduced was that of plaintiff, who testified: "Allen finally foreclosed the papers for me. I think the foreclosure was effected early next year; that is, some time in January or February, 1898. They [papers] were foreclosed, and I became the owner of record, as I always was, for the reason I had not received any consideration for the said Mississippi land from Lammerding. The legal title of the Mississippi land is now in Mrs. Holbrook. The title was perfected." This does not warrant the conclusion that the legal title in Lammerding's grantee had been devested by foreclosure proceedings. The witness merely became the owner of record, as he always was. But the title had been in one Powell, and by him, conveyed

directly to Lammerding, so that plaintiff never, prior to foreclosure, had more than the equitable ownership of the land. His statement that the legal title was in Mrs. Holbrook is but an opinion with respect to the decision of the case, and entitled to no weight. If the law of Mississippi is like that of Iowa,—as we must presume,—then the evidence is entirely consistent with the conclusion that plaintiff is merely in possession of a sheriff's certificate, and may acquire the legal title only after the year of redemption has expired. Only in this situation could his title have continued unchanged as he insists. If he had a deed, it doubtless would have been produced. We are of the opinion that the record fails to show satisfactorily that plaintiff had a legal title to the Mississippi land to convey, and that, even if he had, under the circumstance disclosed, the deed was not delivered to the bank within reasonable time after making the contract. The evidence warranted the judgment rendered, and the decree, in applying the proceeds of the McCleery foreclosure thereon, merely restored to the intervener a part of the price received by plaintiff for the sale of her own land.—AFFIRMED.